IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-02767-MSK

MICHAEL SMITH,

    Plaintiff,

v.

PNC BANK NATIONAL ASSOCIATION, and
THOMAS S. MOWLE, El Paso County Public Trustee,

    Defendants.

___

**OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING**

___

**THIS MATTER** comes before the Court on Plaintiff Michael Smith's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, and Brief in Support Thereof **(#4)**.

## FACTS

According to Mr. Smith's *pro se*[1] Verified Complaint **(# 1)**, Mr. Smith is the owner of a parcel or real property in Peyton, Colorado, which is located within El Paso County, Colorado. The property is encumbered by a promissory note,[2] which Defendant PNC Bank National Association ("PNC") claims to hold, along with a Deed of Trust in favor of Mr. Mowle, the El

---

[1]     Given Mr. Smith's *pro se* status, the Court construes his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

[2]     The note was made by Ryan Yates and Sunshine Yates in 2004, in conjunction with their purchase of the property at that time, and made payable to Nexgen Lending, Inc. The Yates conveyed the property to Mr. Smith via quitclaim deed in 2008, although the property remained encumbered by the note and Deed of Trust. The record does not specifically reflect how PNC came into purported possession of the note.

1

Paso County Public Trustee. Mr. Smith concedes that no payments have been made on the note since January 2007.

For purposes of the instant matter, it is necessary to note only that PNC commenced foreclosure proceedings on the property in May 2017, invoking the procedures of Colo. R. Civ. P. 120. The state court conducted several hearings in the matter, including hearing certain defenses Mr. Smith sought to raise, but on November 9, 2017, the court authorized the Public Trustee to conduct a foreclosure sale. That sale is set for November 29, 2017. Mr. Smith commenced this action on November 17, 2017, and the matter was assigned to the undersigned late in the afternoon of November 21, 2017.

In summary, Mr. Smith's Complaint asserts that certain provisions of Colorado's non-judicial foreclosure process, C.R.S. § 38-38-101(1)(b)(II), (1)(c)(II), and (6)(b), violate the Due Process clause of the Fourteenth Amendment to the U.S. Constitution.[3] Those provisions provide that although a party seeking to initiate a foreclosure proceeding generally must produce "the original evidence of the debt," (along with the necessary indorsements) and "the original recorded deed of trust." C.R.S. § 38-38-101(1)(b), (c). However, the statute also provides that, as an alternative to producing the original note and deed, the party initiating the foreclosure may instead provide only a <u>copy</u> of those documents, plus a certification or statement by the party's attorney attesting to the accuracy of the copy. C.R.S. § 38-38-101(1)(b)(II), (c)(II). Separately, C.R.S. § 38-38-101(6) requires the party to produce the original indorsements that may be necessary to demonstrate that the party is the proper holder of a promissory note, but C.R.S. §

---

[3] Curiously, Mr. Smith expressly asserts these claims only as against PNC. As a general rule, constitutional claims cannot lie as against private parties. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991). Mr. Smith's sole claim against the Public Trustee – the only state actor in this action – is one that seeks an injunction without asserting any specific constitutional claim.

2

38-38-101(6)(b) provides that if the original note is not so indorsed, the party may satisfy the statute's requirements by producing a copy of the note plus a statement from its attorney "that the party . . . is the holder of the evidence of debt." Mr. Smith contends that these provisions allow a party seeking foreclosure to "make an unsworn claim . . . that [it] was the 'current holder of evidence of debt' without ever having to provide evidence thereof." He further asserts that these statutes "lower the standard of proof that a creditor must meet in order to proceed to foreclosure from original documentary evidence to an unsworn statement" and "create an additional burden upon a debtor to establish evidence of the creditor's identity which the creditor, itself, is not required to locate." Relying in *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974), among other cases, Mr. Smith argues that these statutory provisions fail to provide the requisite Due Process protections he is entitled to before being deprived of his property.[4]

Mr. Smith has filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction **(# 4)**, requesting that the Court enjoin the Public Trustee from proceeding with the foreclosure sale.

## ANALYSIS

### A. Standard of review

Because Mr. Smith seeks an *ex parte* temporary restraining order, he must first comply with Fed. R. Civ. P. 65(b)(1). That rule requires him to: (i) demonstrate, via affidavit or verified complaint, facts that show that he will suffer irreparable harm before PNC can be heard in opposition, Rule 65(b)(1)(A); and (ii) certify in writing any efforts that he made to give PNC notice of the motion and the reasons why such notice should not be required, Rule 65(b)(1)(B).

---

[4] Mr. Smith also asserts claims that PNC's efforts to foreclose are barred by the statute of limitations and that PNC is not the proper holder of the note.

3

In addition, Mr. Smith must also make a sufficient showing as to the traditional elements for provisional injunctive relief: (i) irreparable harm to Mr. Smith if the injunction is not granted; (ii) a substantial likelihood that the movant will prevail on the merits; (iii) threatened injury to the movant outweighs possible harm to the opposing party if the injunction is granted; and (iv) that the injunction would not be contrary to the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

However, it is worth noting that the preliminary injunction Mr. Smith requests – one prohibiting foreclosure upon his home – is one that essentially grants him all of the relief requested in his Complaint. The Complaint requests "a permanent injunction prohibiting [the Public Trustee] from undertaking any steps which would lead to a foreclosure sale of Smith's property," along with declarations that the cited provisions of Colorado law are unconstitutional, "a declaration that PNC must provide the original Note, Deed of Trust, and assignments before proceeding with any future attempts to foreclose on the property," and a declaration that PNC's rights to foreclose have been extinguished by the statute of limitation. But for the last item, all of the other items of relief Mr. Smith seeks would effectively be granted were this Court to conclude that Mr. Smith is entitled to a preliminary injunction (and to some extent, his request for an injunction incorporates the last item as well). Mr. Smith must show a likelihood of success on his claims of unconstitutionality in order to obtain his requested injunctive relief and because his claims of unconstitutionality are issues of law, not fact, a finding that he is likely to succeed on those claims is effectively identical to a finding that the statutes are indeed unconstitutional.[5] Similarly, a finding that the statutes are unconstitutional effectively requires

---

[5] The 10th Circuit has occasionally recognized that, especially in cases where constitutional rights are asserted, a party seeking injunctive relief who establishes the three "harm" factors as tipping in its favor then enjoys a more "relaxed" requirement of showing a likelihood of success

PNC to support any further requests to foreclose with original documentation, as the Court will have nullified the statutory alternatives to original evidence. Where the requested preliminary injunction grants essentially all of the relief requested, the Court requires that Mr. Smith demonstrate that the four factors listed above "weight heavily and compellingly in his favor." *O Centro Espirita Beneficienty Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004).

**B. Merits**

The Court finds that Mr. Smith has adequately complied with Rule 65(b)(1)(A), insofar as his Complaint is verified. The Complaint alleges that, if the foreclosure sale scheduled for November 29, 2017 is allowed to proceed, he is subject to being evicted from his home by the successful buyer. The Court has some doubt as to whether that is a foregone conclusion, but it will indulge the assumption that the property in question is unique and thus, its unwarranted loss to Mr. Smith could not be remedied through monetary compensation. *See e.g. Sportsmen's Wildlife Defense Fund v. U.S. Dept. of the Interior*, 949 F.Supp. 1510, 1523 (D.Colo. 1999) (because "any given piece of real property is considered unique," any loss of real property "is *per se* irreparable injury").

Mr. Smith has not complied with Fed. R. Civ. P. 65(b)(1)(B), however. That is, he has not explained what efforts he made to give notice of this lawsuit and motion to PNC, nor why such notice should be excused. That omission is significant: even assuming Mr. Smith could not have commenced this action prior to the November 9, 2017 ruling by the state court authorizing

---

on the merits. *Nova Health Systems v. Edmonson*, 460 F.3d 1295, 1298 n. 6 (10th Cir. 2006), *but see Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (holding that a standard that requires only a showing of a "possibility" of success on the merits is impermissible). However, *Nova* is clear that this "relaxed" standard is not available where the requested injunction "seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme." *Id.* Here, the action Mr. Smith seeks to enjoin is by a governmental actor – the Public Trustee -- pursuant to a statute, and in the public interest of returning property in default on a mortgage to the market.

the foreclosure sale, he still had a period of 20 days between that date and the scheduled foreclosure sale on November 29. That 20 day period would have been sufficient for the Court to hear this matter in expedited fashion on notice to PNC, rather than on an *ex parte* basis now.[6] Thus, the Court has some doubt that an temporary restraining order can enter in this case.

Assuming, however, that the Court were to overlook Mr. Smith's failure to comply with Rule 65(b)(1)(B), the Court would then turn to the preliminary injunction factors, beginning with the likelihood of success. This Court is not persuaded that Mr. Smith has shown a likelihood of succeeding on the merits. As to Mr. Smith's primary argument – that allowing lenders to support foreclosure proceedings using <u>copies</u> of documents rather than originals violates Due Process – the 10th Circuit has considered and rejected that argument. In *Mbaku v. Bank of America*, 628 Fed.Appx. 968, 973 (10th Cir. 2015), homeowners argued that "Rule 120 proceedings violate due process because the foreclosure can be initiated in violation of the best evidence rule using copies of the relevant documents." *Citing* C.R.S. § 38-38-101(1)(b)(II) *and* (c)(II). The 10th Circuit rejected that argument, explaining that "Plaintiffs have not identified, and we have not found, any reason why Colorado's best-evidence rule, Colo. R. Evid. 1002-1004, cannot be invoked in the Rule 120 proceeding as part of the mortgagor's defense to the sale." *Id.* Although Mr. Smith has not specifically invoked the best evidence rule in his filings, his argument here is essentially the same as that of *Mbaku*: that allowing a lender to foreclose by presenting copies of a note or deed of trust, rather than the original, somehow violates the Due Process clause. *Mbaku* clearly considered and rejected that argument.

---

[6] The delay becomes more concerning if one recognizes that Mr. Smith knew as far back as May 2017 that PNC would be relying on the copies-and-certification alternative to producing original documents to initiate this action. In such circumstances, Mr. Smith could have brought his constitutional claims long ago.

By contrast, Mr. Smith does not cite to any authority finding that the cited portions of C.R.S. § 38-38-101 (or any of their sister-state analogues) violate the Due Process clause. Rather, Mr. Smith's argument is that the Court should infer the unconstitutionality of the cited statutes based on language in an unrelated decision. He contends that the Colorado non-judicial foreclosure process was expressly devised to comply with certain due process requirements mentioned by the U.S. Supreme Court in upholding a Louisiana summary replevin statute in *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974). *See Plymouth Capital Co. v. District Court*, 955 P.2d 1014, 1017 (Colo. 1998). Mr. Smith then turns to *Mitchell*, noting that the Supreme Court there approved of Louisiana's replevin statute over Due Process concerns because, among other things, it did not authorize replevin "on the conclusory allegation of ownership or possessory rights," but rather, when the right to recovery "clearly appear[s] from specific facts shown by a verified petition or affidavit." 416 U.S. at 605. Mr. Smith argues here that the cited provisions of C.R.S. § 38-38-101 run afoul of *Mitchell* because they allow a purported holder to commence foreclosures based on such "conclusory allegations" and do not require "a verified petition or affidavit" – in other words, that the copies-plus-certification requirement is the equivalent of a conclusory, unsworn statement. This argument is somewhat inaccurate: Rule 120 expressly requires that a motion seeking an order authorizing sale be "file[d as] a verified motion in a district court." Colo. R. Civ. P. 120(a). However, as the Court understands Mr. Smith's argument to be that although the Rule requires the motion itself to be verified, C.R.S. § 38-38-101 allows certain supporting evidence – such as the movant's claim to possession of the note or the existence of indorsements – to be proven by unsworn certifications or attorney statements. But *Mitchell* did not dig so deeply beneath the surface of the Louisiana statute, and this Court is

7

not inclined – certainly not on an *ex parte* basis – to treat it as establishing Due Process rules that dig as deeply into the Rule 120 process.

To be sure, there may be some merit in Mr. Smith's legal argument. A promissory note, indorsed in blank, is inherently "bearer paper," enforceable by – and, to a large degree, only by – the person in actual possession of it. *In re Miller*, 666 F.3d 1255, 1263 (10th Cir. 2012). As such, physical possession of the original note by a party can be key to establishing that party's right to enforce it. Colorado's scheme, which allows a movant to claim the rights of a holder of bearer paper while producing only a copy of that paper (along with a certification attesting to ownership) does open the door to concerns about mistaken, fraudulent, or duplicative attempts to enforce a note. Certainly, requiring the party seeking to foreclose to produce the original note avoids those concerns. But at the same time, Colorado has the right to establish its own rules governing the determination of property rights. *Id.* Clearly, it has made a conscious decision to favor the efficiency that a streamlined and summary foreclosure process brings over the protections that a slower, more comprehensive process would afford to property owners. Colorado seems to be cognizant of the risk of improper "no-document" foreclosures, requiring parties invoking the copy-and-certification process to indemnify property owners and lienholders for costs and damages that might result from wrongful foreclosures. C.R.S. § 38-38-101(2).

Ultimately, the Court need not decide today whether Mr. Smith's claims of unconstitutionality of the cited provisions of C.R.S. § 38-38-101 are meritorious or not; the Court's task at this early stage of the litigation is to determine whether Mr. Smith is, at the very least, likely to prevail upon his claims. Given that the only authority to directly address the due process issues Mr. Smith raises is *Mbaku*, which cuts against Mr. Smith's claims, and that Mr. Smith's arguments derived from *Mitchell* are untested and arguably distinguishable, this Court

cannot say at this time that Mr. Smith has shown a likelihood of success on the merits of his claims, much less a compelling one. At most, he has only asserted a colorable argument.

In light of that finding, the Court need not extensively address the remaining factors.[7] The Court does pause to make one final observation, however. Rule 65(c) requires that a party seeking an injunction "give[ ] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Here, that rule would require Mr. Smith to post sufficient security to protect PNC against the costs it would incur if it were unable to foreclose on Mr. Smith's house and sell it to recover some of the outstanding debt. Were the Court to attempt to quantify those costs, it would, at a minimum, require Mr. Smith to post security reflecting the amount of monthly payments due on the Yates' note for the expected duration of this litigation, a span of time likely to be at least a year. (The Court would also be receptive to arguments that an additional sum would be required to reflect the lost time value of money that PNC would suffer by not having the entire proceeds of a foreclosure sale now, rather than at the end of the litigation. And an argument could be made that PNC can only be adequately protected by requiring Mr. Smith to post security equal to the entire outstanding balance on the Yates' note.) Mr. Smith has not addressed the question of

---

[7] Mr. Smith's Complaint and motion appear to make an abbreviated argument that PNC's foreclosure action is untimely, and thus should be enjoined on statute of limitation grounds as well. The Court summarily rejects that argument as a basis for *ex parte* injunctive relief. Mr. Smith could have commenced an action seeking injunctive relief on that ground as early as May 2017, when PNC first commenced the instant foreclosure action, but he did not. Instead, Mr. Smith chose to present a limitations defense to the state court hearing the Rule 120 motion. *See Complaint*, ¶ 24. The state court apparently rejected that argument. The record is silent as to the state court's reasoning or Mr. Smith's explanations as to why that reasoning is erroneous. Thus, this Court would find that Mr. Smith has not demonstrated – on the present record -- that he is likely to succeed on his timeliness claim.

security, much less shown an ability or willingness to post a considerable sum to secure the injunction he requests. This, too, favors denial of his request.

Accordingly, the Court finds that Mr. Smith has failed to show an entitlement to an *ex parte* temporary restraining order. In that respect, his motion **(# 3)** is **DENIED IN PART**.

Although the Court has denied *ex parte* relief, Mr. Smith may nevertheless be capable of making a more extensive showing, on notice to the Defendants, that he is entitled to a preliminary injunction. In deference to the fact that the foreclosure sale is proceeding immediately, but that there is necessarily a lag time under Colorado law before that sale becomes final, the Court will expedite proceedings in this matter. The Court will hold a non-evidentiary hearing on **December 7, 2017** at **4:00 p.m.** to address whether: (i) Mr. Smith intends to pursue a preliminary injunction; (ii) whether a request for such an injunction would require an evidentiary hearing to resolve disputed facts; (iii) if so, what facts are disputed; and (iv) how long such a hearing would take and when it can be scheduled. To ensure that the Defendants are properly advised of that hearing, and to ensure that the Court has adequate time to hear their arguments in opposition, the Court will require Mr. Smith to effectuate service of the Summons, Complaint, Emergency Motion, and this Order on the Defendants, in accordance with Fed. R. Civ. P. 4, at or before 5:00 p.m. MST on **December 1, 2017**. The Defendants shall file a response to the Emergency Motion at or before noon MSN on **December 6, 2017**.

Dated this 29th day of November, 2017.

**BY THE COURT:**

_Marcia S. Krieger_
_____

Marcia S. Krieger
Chief United States District Judge